**\*NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS MILLAN, | : | Civil Action No. 09-1065 (FLW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY | : | |
| | : | |
| Defendant. | : | |
| | : | |

**WOLFSON, United States District Judge**:

Thomas Millan ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff disability benefits under the Social Security Act ("the Act"). The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). On appeal, Plaintiff contends that he is entitled to disability insurance benefits ("DIB") under §§ 216(i) and 223(d) of the Act, and supplemental security income ("SSI") under § 1614(a)(3)(A) of the Act. Specifically, Plaintiff maintains that the Administrative Law Judge ("the ALJ"), at Step Five of the sequential process, erroneously found that Plaintiff has the functional capacity to perform substantial gainful activity. After reviewing the Administrative Record, this Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the ALJ's decision is affirmed and Plaintiff's Complaint is dismissed in its entirety.

I.     **Overview**

    **A. Procedural History**

On April 7, 2005, Plaintiff filed concurrent applications for disability insurance benefits and supplemental security income under the Act, claiming that he has been disabled since November 3, 2004.  The claims were denied by the Social Security Administration ("SSA") initially on July 29, 2005, and upon reconsideration on March 10, 2006.  Thereafter, Plaintiff requested and received an administrative hearing on September 25, 2007.  The ALJ rendered an unfavorable decision against Plaintiff on October 22, 2007, denying all claims and found that Plaintiff was not totally disabled.  Plaintiff subsequently filed an appeal, and the Appeals Council remanded the case to the ALJ, holding that the ALJ had inadequately considered several medical reports Plaintiff offered as evidence of his disability.  A second hearing was held on July 10, 2008, and, again, the ALJ denied all of Plaintiff's claims and found him not totally disabled.  Plaintiff requested an appeal of the second decision, which the Appeals Council denied on January 15, 2009.  Plaintiff now appeals that denial.

    **B. Background**

Plaintiff was born on April 18, 1961.  Administrative Record ("AR") 490.  Before his disability, he worked for approximately 20 years as an electrician with the Port Authority of New York and New Jersey.  AR 495.  On November 3, 2004, while in the process of removing a 175 pound pump[1] from the back of a bucket truck with a co-worker, Plaintiff injured his neck, left shoulder and back, and was taken to the emergency room.  AR 492, 498.  Plaintiff then visited his

---

[1]    Plaintiff's testimony differed slightly during the September 25, 2007 hearing in that Plaintiff described the pump as weighing approximately 160 pounds.  AR 467.

primary care physician, Dr. Frank C. Alario, where x-rays and an MRI were prescribed.  AR 231.

Since then, Plaintiff has pain in his neck and lower back, which Plaintiff described as being

constant, limiting everything he wants to do.  AR 467-68; 493-94.  Plaintiff claims he can walk

no more than 15-20 minutes without stopping to rest, can sit comfortably only in hard chairs, and

cannot go up and down the stairs without pain.  AR 471, 489. 498.  He claims that although he is

able to dress himself, he has difficulty in doing so.  AR 502.  According to Plaintiff, he cannot

bend while sitting down, cannot turn his head to the left without shooting pain, and cannot lift his

left arm due to shoulder pain.  AR 231-32.  Plaintiff also complains of frequent headaches, at times

associated with noise and light sensitivity, which were not present prior to the accident.  AR 232.

Plaintiff attempted physical therapy for 2.5 weeks, but stopped because it aggravated his back pain

and increased his headaches.  Id.  Plaintiff has been on various pain medicine over the years but

still suffers from constant pain.  Id.  Plaintiff has not worked since the accident.  AR 466-67; 495-

96.

### C.  Medical Records

Various medical tests confirm Plaintiff's injuries.  Both a November 5, 2004 x-ray and an

MRI of the cervical spine dated November 23, 2004 reveal degenerative disc disease, confirming

Plaintiff's neck injury.  AR 392-93.  Plaintiff's lower back injury was confirmed by an MRI of the

lumbar spine taken on November 23, 2004 that also showed degenerative disc disease, AR 389-91,

and MRIs taken on March 2, 2005 and January 25, 2006, which showed disc herniation.  AR 276,

297.  An MRI dated November 27, 2004 showed injury and tendonosis to Plaintiff's left shoulder.

AR 387-88.

The record contains various notes and reports from doctors who have treated and/or examined Plaintiff following the November 3, 2004 accident.  There is a single prescription from Dr. Brian T. Kelly, written on December 1, 2004, which stated that Plaintiff was being treated for disc herniation and should not return to work until further evaluation.  AR 367.  After his initial visit on the day following the accident, Plaintiff again saw Dr. Alario, his primary physician, on January 27, 2005, complaining of stomach pain.  Dr. Alario performed an examination and prescribed Aciphex for the stomach pain.  Plaintiff also testifies that he continues to be treated by Dr. Alario, AR 497, although the record does not appear to contain any notes other than a questionnaire Dr. Alario sent to Plaintiff's employer confirming Plaintiff's injuries, AR 168, and numerous copies of prescriptions given to Plaintiff, AR 309-15.  The record does, however, contain a "to whom it may concern" letter written by Dr. Alario on April 13, 2005, stating that "patient is being treated for a back and neck injury.  He is unable to return to work at this time." AR 275.  The record also indicates that Plaintiff saw Dr. Alario on August 21, 2007 for an examination, and Dr. Alario opined that "[i]t is my professional opinion that the patient will be unable to return to work and is considered permanently disabled."  AR 384.

Additionally, Plaintiff sought chiropractic care on November 4, 2004, a day after the accident, with Erik R. Weston, D.C.  Dr. Weston's impression was that Plaintiff suffered injuries to the cervical, thoracic, and lumbar spines and the left shoulder that caused Plaintiff pain and severe migraines.  AR 365.  He commented that Plaintiff "has suffered permanent injuries as the result of the incident of 11/03/2004, which unfortunately restricts him from leading a normal life for a man his age and this is something he will have to deal with on a daily basis for the rest of his life."  AR 364.  The record also contains treatment notes of dozens of visits to Dr. Weston in

4

sporadic frequency from November 6, 2004 to April 9, 2007, which evidence Plaintiff's continued back pain.  AR 327-335.

Dr. Gregory E. Lutz examined and treated Plaintiff from December 16, 2004 through August 30, 2005.  Initially Dr. Lutz diagnosed Plaintiff with lumbar disc and cervical disc displacement, and opined that "[d]ue to his condition he is temporarily totally disabled until further treatment."  AR 230.  Plaintiff visited Dr. Lutz on January 10, 2005, and received a fluoroscopic caudal epidural steroid injection for his back pain.  AR 371.  Plaintiff returned on February 7, 2005, stating that he had no relief after the epidural injection.  AR 374.  Dr. Lutz prescribed another pain injection.  AR 373.  On a March 7, 2005 visit, Plaintiff again complained of no relief after the injection.  AR 376.  An anesthetic injection was given this time, which resulted in moderate relief.  Id.  Plaintiff returned for a follow-up on April 15, 2005, and this time Dr. Lutz gave an updated diagnosis of "chronic disc degenerative pain, second to L4, L5, and S1 disc disease.  There is no sign of any active radiculopathy."  AR 380.  Plaintiff also complained of persistent headaches and migraines, and was referred to a neurologist.  Id.  In a letter written on May 2, 2005, Dr. Lutz repeated his diagnosis from April 15, and stated, "it is unlikely that [Plaintiff] will return to his previous level of gainful employment.  However, I think he would be able to manage with modifications to his job that would remove the pain of bending, stooping or lifting while maintaining a lifting restriction of 20 lbs. or less."  AR 259.  Plaintiff was again seen by Dr. Lutz on May 3, 2005, and Dr. Lutz's diagnosis was unchanged.  AR 227.  Finally, in a letter dated August 30, 2005, Dr. Lutz changed his position and stated, "[H]e is currently partially disabled and is unable to return to his previous level of gainful employment. . . .  In addition, he has a permanent lifting restriction of no greater than 10 lbs."  AR 257.

5

On May 5, 2005, Dr. Sandra L. Escandon, a neurologist, performed an independent neurological evaluation on Plaintiff with regard to his pain, seemingly in connection with Plaintiff's workplace disability claim. AR 231. Dr. Escandon reviewed Plaintiff's medical records and stated that her own observations confirmed the previous diagnoses. AR 235-36. She concluded that "[a]ccording to neurologic standpoint he has reached maximum medical improvement as to no further neurologic treatment . . . . At this point I recommend chronic pain management." AR 236. She further opined that "[h]e is currently restricted from working and standing more than 10 or 15 minutes, walking more than 15 to 20 minutes or sitting more than 20 minutes." Id. However, she qualified her opinions by stating, "[i]f the amount of disability needs to be determined he should be sent for a functional disability evaluation. I do not do disability assessment as part of a neurologic examination." Id.

Dr. John H. deJong reviewed Plaintiff's medical records on May 18, 2005, also as part of the independent review concerning Plaintiff's workplace disability claim. AR 237. He diagnosed Plaintiff with cervical radiculopathy with chronic neck pain, cephalgia, shoulder pain, herniated cervical disc, lumbosacral radiculopathy/spinal stenosis with chronic back pain, and herniated thoracic disc with moderate back pain. AR 241. He concluded that "[i]t does not appear that he is able to return to work as an Electrician with The Port Authority at this point in time. I cannot state when he would be able to return to work." Id. He further stated that "[i]n my opinion, he is marked partially disabled." AR 242.

Plaintiff was treated by Dr. Peter D. Barcas, a neurologist, on several occasions, primarily for his headaches. On Plaintiff's first visit on May 18, 2005, Dr. Barcas observed that Plaintiff's cervical range was somewhat limited in rotation to about 60 to 70 degrees, but otherwise had full

strength in all extremities and a normal and steady gait.  AR 267.  Plaintiff complained of no chest

pain, shortness of breath, or abdominal pain.  Id.  With regard to Plaintiff's headaches, Dr. Barcas

opined that they may be cervicogenic, and ordered a brain MRI to rule out structural abnormality.

Id.  The MRI was performed on May 26, 2005, and no abnormality was found.  AR 265.  On

Plaintiff's next visit on June 3, 2005, Dr. Barcas' observations remained unchanged, and having

noted Plaintiff's normal MRI, prescribed Midrin for his headaches.  AR 263.  He also wrote a letter

on Plaintiff's behalf stating, "I believe that his headaches are related to his cervical injury, and he

has not been able to return to his occupation because of this and his back problem as well."  AR

264.  Plaintiff returned to Dr. Barcas on November 10, 2005, stating that he had an increase in

symptoms recently with increasing headaches, neck and back pain.  AR 437.  Dr. Barcas again

noted limited cervical range, this time 45 degrees to each side.  Id.  Plaintiff continues to have full

strength in the extremities.  Id.  Dr. Barcas prescribed Zanaflex, as well as continued Plaintiff's

prescription for Midrin and Imitrex, an injection that Plaintiff stated helped with his severe

migraines.  Id.  On a follow-up visit on November 30, 2005, Plaintiff stated that the Zanaflex and

Midrin have helped with his headaches.  AR 438.  Plaintiff was able to do a straight leg raise

without increased pain, but stated that his pain worsens when getting up from a chair or when

walking.  Id.  Dr. Barcas recommended an electromyography ("EMG") study for further evaluation.

Id.  The EMG was performed on December 13, 2005 by Dr. Barcas, and Plaintiff was found to

have no active denervation or abnormalities of voluntary motor unit action potentials.  AR 261-62.

All test results were within normal limits with no evidence of left lower extremity neuropathy or

left and right lumbosacral radiculopathy.  Id.

Plaintiff was examined by a state D.D.S. consultant, Dr. Betty Vekhnis, on June 1, 2005. AR 243.  Dr. Vekhnis' examination revealed some tenderness and limitations of movement, but otherwise "[n]o focal atrophy or weakness, nontender range of motion in elbow, wrists and hands. Normal grip strength.  Normal neurovascular examination . . . full nontender range of motion in hips, knees and ankles" with "full nontender range of motion right shoulder, tender on ranging on the left shoulder."  AR 245.  Dr. Vekhnis also noted that Plaintiff "walked into the office with normal heel to toe gait.  No assistive device was utilized.  He does not wear a brace.  He was able to walk on heals and toes.  He is able to squat."  Id.  Plaintiff informed Dr. Vekhnis that he was "independent in activities of daily living and self-care.  He drives.  He estimated his ability for sitting and standing one-half hour, walking 15 minutes."  AR 244.

Another state D.D.S. consultant, Dr. P. Carbonara, performed a Physical Residual Functional Capacity Assessment on July 27, 2005.  AR 249.  Dr. Carbonara estimated that Plaintiff can occasionally lift 20 pounds, frequently 10 pounds.  AR 250.  He can stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday.  Id.  He is unlimited in his ability to push and/or pull, including the operation of hand and/or foot controls.  Id.  He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, although he should never climb ladders, ropes, and scaffolds, and should never crawl.  AR 251.  Plaintiff has no manipulative, visual, communicative, or environmental limitations.  AR 252-53.

From July 26, 2007 through June 28, 2008, Plaintiff was treated for his injuries by Dr. John P. Reilly, whose opinions Plaintiff relies heavily on in the instant case.  In Dr. Reilly's initial examination of Plaintiff on July 26, 2007, Dr. Reilly noted that Plaintiff had an antalgic gait, was able to get on the exam table but with difficulty, and some head forward posturing.  AR 360.

8

There were restrictions in motion in the neck in all planes tested, and diffuse tenderness to palpitation in the thoracic and lumbar spine.  Id.  There was full range of motion and no instability in both shoulders, with mild left shoulder tenderness, and good motion in the hips and knees without pain or restriction.  Id.  Reflexes were brisk and symmetric at all levels.  Id.  Dr. Reilly diagnosed Plaintiff with injuries to his cervical, thoracic and lumbar spine, and opined that Plaintiff had a "moderate to marked permanent, partial disability."  Id.

Plaintiff continued to seek treatment with Dr. Reilly during the next several months.  The record contains very brief notes of Plaintiff's visits on September 6, 2007, October 18, 2007, December 13, 2007, January 24, 2008, and March 6, 2008, during which there was little change in Plaintiff's condition.  AR 432-36; AR 398.  However, Dr. Reilly at some point, but without explanation, changed his opinion from "moderate to marked permanent, partial disability," AR 432, to "he continues to be totally disabled."  AR 433-36.  Plaintiff was prescribed Fexeril as a muscle relaxant, which Plaintiff stated help with the pain.  AR 435-36.  Additionally, in a three-page report written on June 28, 2008 to Plaintiff's attorney F. John Calabro, Esq., Dr. Reilly notes two other visits by Plaintiff in April 2008 (no day given) and May 29, 2008, during which the only change observed was some kyphosis of the spine.  AR 397-99.  At the end of the report, Dr. Reilly stated that "[i]t would be my medical opinion at this time that the symptoms and physical findings are permanent and that Thomas Millan is totally disabled and unable to work."  AR 399.

Dr. Reilly also submitted a disability evaluation with his report.  AR 400-06.  He found that Plaintiff can stand and sit up to two hours continuously and for a total of four hours in an eight-hour workday.  AR 404.  He can walk one hour continuously and for a total of three hours in an eight-hour workday.  Id.  He can occasionally lift and carry up to 20 pounds, occasionally reach,

9

but can never bend, squat, crawl, and climb.  Id.  He cannot use his foot for repetitive movements, as in pushing and pulling of leg controls.  AR 405.

Finally, Plaintiff was again examined by state D.D.S. consultants in advance of his second hearing.  On April 8, 2008, Dr. Vekhnis examined Plaintiff and found that Plaintiff had non-tender range of motion of right shoulder, elbows, wrists, hands, hips, knees and ankles.  AR 450-51.  Muscle strength and sensory examination of those areas were all normal.  AR 451.  Plaintiff had tender range of motion in his left shoulder, with reduced muscle strength due to pain.  Id.  He had normal functions of both hands for fine and gross motor manipulations, and did not utilize an assistive device for ambulation.  Id.  Plaintiff was described as "a moderately obese male not in acute distress . . . .  He walked slowly.  He did not attempt to walk on heels and toes, or squat citing pain.  He was able to mount and dismount examination table on his own."  AR 450.  Another Physical Residual Functional Capacity Assessment was performed, this time by Dr. A. Cirillo, whose findings were substantially similar to that of Dr. Carbonara, with an additional manipulative limitation in that Plaintiff was found to have limitations in reaching all directions and that Plaintiff could stand/walk with normal breaks for two hours in an eight-hour workday, rather than the six hours found by Dr. Carbonara.  AR 453-56.

### D.  Testimonial Record

At both hearings, Plaintiff testified that he drove to the hearing, which took about an hour.  AR 473, 491.  He rated his pain to be consistently at a six on a scale of ten.  AR 467, 494.  Plaintiff testified that he can sit in a soft back chair for up to 15-20 minutes; can stand for 20 minutes; can walk for up to 20 minutes; and is fearful of doing any other type of exercise because of pain.  AR 471-72, 498-99.  He does not do chores and rarely goes shopping, although he does go out and pick

up small items.  AR 472, 502-03.  He can only drive locally.  AR 473, 491.  Plaintiff also testified

that he can only comfortably carry up to five pounds.  AR 473, 500-01.  At both hearings,

Plaintiff's attorneys asked him how he reconciled that testimony with doctors' reports stating that

he can carry more, Plaintiff testified that he's fearful of carrying more because of the pain.  AR

473, 501.  Plaintiff also testified that he cannot bend, kneel, crouch, or crawl.  AR 501.  Plaintiff

testified that he is on disability retirement from his former employer, and that he is receiving

worker's compensation.  AR 495-96.

At the second hearing, which is the one directly relevant to this appeal, Mr. James Earnhart,

a vocational counselor, testified as a vocational expert ("VE").  The ALJ posed the following

hypothetical to Mr. Earnhart:

> Assume for the hypothetical question an individual who is 47 years of age.
> Assume this individual has a high school education.  Assume the following
> exertional limitations.  Assume this individual can sit for up to one hour at a time.
> Assume this individual can sit for a total of six hours out of eight in the workday.
> Assume this individual could stand for up to 15 minutes at a time.  Assume this
> individual could stand for a total of two hours out of eight in the workday.  Assume
> this individual could walk for up to 20 minutes at a time.  Assume this individual
> could walk for a total of two hours out of eight in the workday.  Assume this
> individual could lift 10 pounds on an occasional basis, less than 10 pounds on a
> frequent basis.  Carry 10 pounds on an occasional basis, less than 10 pounds on a
> frequent basis.  Assume this individual could only occasionally climb stairs, could
> never climb ladders, could only occasionally perform job tasks involving a good
> sense of balance, could only occasionally bend or stoop.  Assume this individual
> could only occasionally reach vertically, that is overhead.

AR 507-08.  The ALJ first asked the VE if an individual in the hypothetical can return to Plaintiff's

previous work, to which the VE testified that he could not.  AR 508.  When asked by the ALJ

whether there is any other work which exists in the regional or national economy that such an

individual would be able to perform, the VE testified that such an individual would be capable of

11

unskilled sedentary work, such as telephonic survey worker (250,000 in the national economy and 2,500 in the Philadelphia MSA), phone order clerk (107,000 in the national economy and 1,500 in the Philadelphia MSA), and parking lot cashier (121,000 in the national economy and 1,400 in the Philadelphia MSA). AR 508-09. The VE further testified that the availability of these jobs would not be affected even if this individual would have to stand frequently to adjust, but would not be available if said individual has to take frequent unscheduled breaks or could not maintain regular attendance. AR 509.

### E.  The ALJ's Findings

The ALJ began by finding that based on Plaintiff's earning record, Plaintiff is insured under DIB through December 31, 2010. AR 24. Plaintiff, therefore, must establish disability on or before that date in order to be eligible for DIB. The ALJ then applied the standard five-step process in determining if Plaintiff has in fact satisfied his burden of establishing disability. Id.

At Step One, the ALJ found that the earning record substantiates the claim that Plaintiff has not engaged in substantial gainful activities since November 3, 2004. Id. At Step Two, the ALJ found, based on the above factual findings, that Plaintiff suffers from severe impairments caused by injuries to the neck, back, and left shoulder. Id. At Step Three, the ALJ found that Plaintiff's combination of impairments do not meet or medically equal one of the listed impairments under SSA regulations that would automatically find Plaintiff disabled. Id. At Step Four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of sedentary work, consistent with the hypothetical described above. Id. The ALJ made his findings by stating that they are consistent with the objective medical evidence in the record, and that Plaintiff's testimony concerning the intensity, persistence and limiting effects of his

injuries are not credible to the extent that they are not supported by objective medical evidence. AR 24-25.

Having determined Plaintiff's RFC, the ALJ went on to find that Plaintiff is unable to perform any past relevant work.  AR 25.  Proceeding to Step Five, the ALJ then held that since Plaintiff was born on April 18, 1961, he was 43 years old at the onset of his disability, which placed him in the "younger individual" category for DIB purposes, and the higher category of 45 years old and older for SSI purposes.  Id.  The ALJ further found that Plaintiff has at least a high school education and is able to communicate in English, and that transferability of job skills is not material because Plaintiff is found to be limited to unskilled labor.  Id.  Finally, based on the foregoing findings and the vocational expert's testimony at the hearing, the ALJ found that a significant number of jobs exists in the national economy that Plaintiff can perform.  Therefore, Plaintiff is not disabled, as defined by the SSA, at any time through the date of the ALJ's decision. Id.

## II.  Discussion

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must

examine the record in its entirety for purposes of determining whether the Commissioner's findings have support by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

## B.  Standard for Entitlement of Benefits

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

14

423(d)(2)(A).  Eligibility for supplemental security income requires the same showing of disability.

42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n. 5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he/she is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-7 n. 5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not have a severe impairment is not considered disabled.  20 C.F.R. § 404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his/her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his/her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n. 5.  If the specific impairment is not listed, the ALJ will consider in his/her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment

15

is medically equivalent.  See 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. Id.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he/she retains the residual functional capacity to perform his/her past relevant work.  20 C.F.R. § 404.1520(e); Bowen, 482 U.S. at 141.  If the claimant is able to perform his previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his/her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n. 5; Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  Id.

**C.  Plaintiff's Claims on Appeal**

The ALJ determined, and the parties do not dispute, that Plaintiff satisfied the first four steps of the five-step process.  However, the Plaintiff asserts that the ALJ erred at Step Five because 1) the ALJ again did not adequately consider all of the medical reports, in particular Dr.

Reilly's report; 2) the ALJ did not correctly assess Plaintiff's Residual Functional Capacity ("RFC"); 3) the VE's testimony was ineffective due to an inadequate hypothetical; and 4) the ALJ incorrectly rejected Plaintiff's testimony.

### 1. The Medical Reports

Plaintiff contends that the ALJ erred in his Step Five determination because he failed to properly consider the medical reports and opinions of Plaintiff's treating physicians, particularly those of Dr. Reilly, and substituted his own opinion that is not supported by substantial evidence. The Court disagrees.

"An ALJ should give treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time." Masher v. Astrue, No. 08-4850, 2009 WL 4573907, at *4 (3d Cir. Dec. 7, 2009) (quoting Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008)). "Although the treating physician's opinion is generally given controlling weight, that opinion is entitled to controlling weight only when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record.'" Bonanno v. Comm'r of Soc. Sec., No. 08-1709, 2009 WL 82694, at *2 (3d Cir. Jan. 14, 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). The ALJ may reject the conclusions of the treating physician if he weighs those conclusions against the other relevant evidence and explains why they have been rejected. Jaramillo ex rel. Mesa v. Comm'r of Soc. Sec., 130 Fed.Appx. 557, 562 (3d. Cir. 2005).

Plaintiff relies heavily on Dr. Reilly's June 28, 2008 report, in which Dr. Reilly found that Plaintiff can only sit for four hours in an eight-hour work day, can only occasionally reach, and

cannot bend, squat, crawl, or climb.  Dr. Reilly also opined that Plaintiff is totally disabled.  These findings are inconsistent with the ALJ's RFC determinations.  Citing to 20 C.F.R. § 404.1527(d), which states that the ALJ must cite countervailing medical evidence to reject a treating physician's opinion, Plaintiff argues that there was no contrary evidence cited by the ALJ to dispute Dr. Reilly's opinions.  Plaintiff also argues that the record does not contain the opinion of a consultative examiner finding that the claimant could perform all of the requirements of sedentary work.  This is simply not the case.  Although the ALJ did not mention their reports by name in his decision, the ALJ's findings were consistent with both Dr. Carbonara and Dr. Cirillo's reports: that Plaintiff can sit for six hours in an eight-hour work day with normal breaks, and Plaintiff can occasionally bend, squat, or climb ramps and stairs; in fact, both reports indicated that Plaintiff can occasionally lift up to 20 pounds when the ALJ restricted his findings to only 10 pounds.  AR 250, 453.  While greater precision in drafting would have been preferable, particularly in light of the fact that the Appeals Council had once remanded the matter for failure to adequately consider Plaintiff's medical reports, the ALJ's decision nonetheless clearly incorporates the findings in the reports of Doctors Carbonara and Cirillo

On the balance of the record, the Court simply cannot say that the ALJ's findings were not supported by substantial evidence in the record.  The ALJ need not address a physician's report by name if the ALJ, when appropriate, includes "a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so a reviewing court may know the basis for the decision."  Arroyo v. Comm'r of Soc. Sec., 82 Fed.Appx. 765, 768 (3d Cir. 2003) (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).  The ALJ's findings of Plaintiff's RFC, with the one modification made in Plaintiff's favor, were identical to Dr. Carbonara and Dr. Cirillo's

reports.  Even if they were not cited by name, there is little doubt that they were the basis of the ALJ's findings.  By rejecting Dr. Reilly's opinions, the ALJ simply chose to adopt one conflicting report over another, a factual determination to which the Court is required to give deference. Significantly, the ALJ provided other reasons why Dr. Reilly's conclusions were rejected.  AR 19-20.  The ALJ held that Dr. Reilly did not support his opinions by objective medical evidence and instead relied on the history given by Plaintiff, so his opinions cannot be given more than minimal weight.  AR 19.  Looking at  Dr. Reilly's own observations during his physical examinations of Plaintiff, the ALJ found that they do not correspond with total disability.  Id.  Finally, the ALJ noted that Dr. Reilly's opinion that Plaintiff was restricted from using foot controls was inconsistent with Plaintiff's own testimony that he was able to drive.  AR 20.

There is substantial evidence to support the ALJ's findings.  As noted above, the record contains only scant accounts of Dr. Reilly's treatment of Plaintiff.  In his initial evaluation, Dr. Reilly only found Plaintiff to be partially disabled.  At some point, however, Dr. Reilly changed his opinion and found that Plaintiff is now totally disabled.[2]  Nothing in the record explains why Dr. Reilly changed his opinion.  There were no additional tests done, no new examination findings, and no subsequent medical procedures performed.  Accordingly, there is substantial evidence in the record to support the ALJ's rejection of Dr. Reilly's opinion.  A treating physician's opinion is given controlling weight only if it is well-supported by medically acceptable clinical and

---

[2]Plaintiff attempts to gloss over this change-of-opinion by stating that "[i]f Dr. Reilly believed that plaintiff's disability to be mild he would have stated as much; instead, his opinion concerning disability ranged from moderate-to-total."  Plaintiff's Memorandum of Law ("PLM") at 15.  However, in this case, the difference between a finding of moderate partial disability and total disability is relevant and material.

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  Bonanno, 2009 WL 82694, at *2.[3]

With respect to Plaintiff's other treating physicians, Dr. Alario, Dr. Barcas and Dr. Lutz, and, in addition, Plaintiff's chiropractor, Dr. Weston,[4] the ALJ did not afford significant weight to their opinions citing two reasons: 1) they were not supported by objective medical evidence, and 2) they were vague as to whether Plaintiff can perform work activities other than his prior work. Examining the opinions of these doctors, they appear to the Court to be primarily concerned with Plaintiff's claims for disability retirement and worker's compensation, matters outside of the instant case.  They dealt with whether Plaintiff can return to his previous work, not whether Plaintiff can perform other gainful activities.  These doctors never found Plaintiff to be totally disabled.  In fact, Dr. Lutz found Plaintiff to be only partially disabled and was restricted to lifting no more than ten pounds.  The ALJ did not err in holding that these opinions would not be given controlling weight in determining Plaintiff's RFC, because with the exception of Dr. Lutz's finding

_____

[3]Plaintiff also points to the ALJ's allegation that Dr. Reilly's report "appears to be purchased by claimant's Worker's Compensation attorney" as proof that the ALJ improperly rejected Dr. Reilly's opinions.  In considering a claim for disability benefits, the ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion.  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000).  While the ALJ's use of the word "purchased" is troubling, the Court does not find that the ALJ rejected Dr. Reilly's report based on his own credibility judgments.  Although the ALJ expressed his doubts as to the credibility of the report, nothing in the record suggests that it was the basis of the ALJ's findings.

[4]A chiropractor's opinion is not "an acceptable medical source" entitled to controlling weight in determining whether claimant is entitled to social security disability benefits.  Hartranft v. Apfel, 181 F.3d 358, 361 (3d Cir. 1999).  However, an examiner may consider a chiropractor's opinion along with other evidence that he or she deems as relevant to ascertain the severity of a claimant's impairments.  Id.; Caruso v. Comm'r of Soc. Sec., 99 Fed.Appx. 376, 380 n. 5 (3d. Cir. 2004).

that Plaintiff can lift no more than ten pounds, which the ALJ incorporated into his determination, these opinions simply did not assess what Plaintiff's residual functional capacities were, nor do they support a finding of total disability; by finding that Plaintiff cannot return to his previous work, the ALJ had already accepted the conclusions of these other physicians.  Therefore, the Court finds that the ALJ's findings were proper and supported by substantial evidence.

### 2.  Residual Functional Capacity

Plaintiff argues that the ALJ disregarded medical opinions and substituted his own when he determined that Plaintiff can sit for six hours in an eight-hour workday, and that he can bend occasionally.  Plaintiff points to three reports, which Plaintiff contends are uncontroverted, as evidence that the ALJ disregarded expert opinions and substituted his own: Dr. Reilly's report, stating that Plaintiff can only sit for four hours in an eight-hour workday and should never bend, AR 404; Dr. Escandon's report, stating that Plaintiff could not sit for "more than twenty minutes" at a time, AR 236; and one of Dr. Lutz's letters , which stated that Plaintiff "is unable to perform any lifting and bending type of work due to his persistent lower back pain.  AR 380.  However, notwithstanding Plaintiff's bald assertion, the record contains ample conflicting evidence.

The "Physical Residual Functional Capacity Assessment" of July 27, 2005, performed by Dr. Carbonara, clearly indicated that Plaintiff can sit "for a total of about 6 hours in an 8-hour workday" with only normal breaks, and that he can occasionally climb, balance, stoop, kneel, and crouch. AR 250-51.  Plaintiff asserts that Dr. Carbonara was "alone in the record," PLM at 12, but in another assessment performed by Dr. Cirillo on May 15, 2008, which Plaintiff notes that the ALJ "tellingly without once mention[ed]" in his decision, PLM at 13, Dr. Cirillo made the same finding as Dr. Carbonara, that Plaintiff can sit for a total of six hours in an eight-hour workday.

AR 453-56.  As stated above, the simple fact that the ALJ did not cite to those reports by name does not render his findings unsubstantiated, see Arroyo, 82 Fed.Appx. at 768, nor was the evidence overwhelmingly in favor of Plaintiff, as he suggests.

In addition, there are conflicts within the same reports Plaintiff offers as evidence.  While Dr. Escandon stated that Plaintiff is restricted to sitting no more than 20 minutes, Dr. Reilly's report stated that Plaintiff can sit and stand for two hours continuously.  AR 404.  And, while Dr. Lutz's letter did state that Plaintiff cannot perform any lifting and bending type of work, in a later letter Dr. Lutz stated, "I think he would be able to manage with modifications to his job that would remove the pain of bending, stooping or lifting."  AR 259.  Furthermore, Dr. Escandon explicitly stated that she was not making a disability functional evaluation, AR 236, and it is important to note again that both Dr. Escandon and Dr. Lutz focused their examinations of Plaintiff on whether he can return to his previous job, not whether he can perform any job.  Accordingly, the Court finds no error in the ALJ's RFC determination in that it was supported by substantial evidence in the record.

### 3.  VE's Testimony

Plaintiff additionally argues that the VE's testimony was ineffective because the hypothetical given to him by the ALJ did not fully reflect Plaintiff's disabilities.[5]  Plaintiff alleges

---

[5]Plaintiff noted, but did not argue, that the vocational expert based her determination that a significant number of jobs existed in the region by utilizing data from the Philadelphia MSA, which does not include Monmouth County, where Plaintiff resides.  However, the Act does not require that a significant number of jobs exist only within the region that a claimant resides, instead "in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The vocational experts at both hearings noted a large number of jobs existed in the national economy, around ten times more than those that existed in the Philadelphia area, which Plaintiff would be able to perform.

that because Plaintiff can only sit for four hours in an eight-hour day and cannot bend at all, the ALJ's hypothetical omitted some of Plaintiff's impairments and therefore is incomplete, thus rendering the VE's testimony ineffective as it is based on the assumption of certain skills that Plaintiff cannot perform.

To support his argument, Plaintiff points to a line of cases which hold that the ALJ's hypothetical must accurately describe a claimant's individual physical and mental limitations in order for the VE's testimony to be a valid representation of the claimant's ability to perform other employment.  PLM at 23-24 (citing, e.g., Schonewolf v. Callahan, 972 F.Supp. 277, 289 (D.N.J. 1997); Weber v. Massanari, 156 F.Supp.2d 475, 484 (E.D. Pa. 2001); Akers v. Callahan, 997 F.Supp. 648, 661 (W.D. Pa. 1998)).  If there was no medical evidence in the record to support the findings that Plaintiff can sit for six hours in an eight-hour day and can occasionally bend, then Plaintiff would be correct, the ALJ's reliance upon the VE's testimony would be defective and remand would be proper.  Indeed, the Third Circuit has made clear that an "ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations."  Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005); see also Knox v. Comm'r of Soc. Sec., No. 09-1358, 2010 WL 517608, at *4 (3d. Cir. Feb. 12, 2010).  However, as previously discussed, the ALJ's findings in his RFC determination were indeed supported by substantial evidence, and thus the hypothetical, which incorporated those findings, accurately conveyed to the VE Plaintiff's clearly established limitations.  Rather than undermine the ALJ's determination, the line of cases proffered by Plaintiff actually supports it.   "If there exists substantial evidence supporting the claimant's condition as portrayed by the ALJ, then the ALJ may rely on V.E. testimony about a person in such a condition."  Schonewolf, 972 F.Supp. at 289; see also Myers v. Comm'r of Soc.

Sec., 340 Fed.Appx. 819, 821 (3d Cir. 2009) ("A 'vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's] hypothetical [question[s] accurately portay[] the claimant's individual physical and mental' limitations.") (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

Because the Court finds that the ALJ's RFC determination was supported by substantial evidence, the ALJ's hypothetical, which was based on that determination, represented an accurate description of Plaintiff's physical and mental limitations.  As such, the VE's testimony in answering that hypothetical was therefore a valid representation of Plaintiff's ability to perform other work.  Thus, the Court finds that the ALJ's reliance on the VE's testimony was proper.

### 4.  Plaintiff's Testimony

Finally, Plaintiff turns to the ALJ's rejection of his testimony.  Plaintiff asserts that the ALJ incorrectly rejected Plaintiff's testimony because his assessment, that Plaintiff was not totally credible, was unsupported by the record.  Specifically, Plaintiff argues that nothing in the record suggests that Plaintiff was exaggerating the extent of his pain and the limitations caused by his impairments, and that "the consistency of an individual's statements must be weighed by the adjudicator and are a strong indicator of credibility."  Plaintiff's Memorandum of Law, at 22.

Allegations of pain and other subjective symptoms must be supported by objective medical evidence.  Hartranft, 181 F.3d at 362; see 20 C.F.R. § 404.1529.  There must be objective evidence of some condition that could cause pain, but not objective evidence of pain itself.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993)  Once the ALJ concludes that a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ "must evaluate the intensity and

persistence of pain or symptom, and the extent to which it affect's the individual's ability to work." Hartranft, 181 F.3d at 362.  This requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.  Id.; see 20 C.F.R. § 404.1529(c).  The ALJ is permitted to determine that subjective complaints of pain are inconsistent with the objective medical evidence and other evidence in the record.  McQueen v. Comm'r of Soc. Sec., 322 Fed.Appx. 240, 245 (3d Cir. 2009).  "An adverse credibility determination must contain specific reasons for the finding and must be sufficiently specific to make clear the weight given to the claimant's statements and the reasons for that weight."  Coates v. Astrue, No. 08-0569, 2009 WL 1514457, at * 7 (W.D.Pa. May 29, 2009) (citing Social Security Ruling 96-7p).  "If the medical evidence suggests a claimant 'has an impairment which is reasonably expected to produce some pain, [the ALJ] must consider all of the evidence relevant to the individual's allegations of pain, even if the alleged pain is more severe or persistent than would be expected.'"  Knox v. Comm'r of Soc. Sec., 2010 WL 517608, at *3 (quoting Sykes v. Apfel, 228 F.3d 259, 266 n.9 (3d Cir. 2000)).  "The ALJ 'must explicitly weigh the evidence and explain a rejection of the evidence.'"  Id.

Here, there is no dispute that Plaintiff suffered injuries that can produce symptoms of pain and other limitations.  The relevant finding is not whether Plaintiff was in pain or whether Plaintiff's impairments caused any limitations on his activities.  The record shows that the ALJ accepted the existence of pain and limitations; indeed, the ALJ's finding that Plaintiff cannot return to his previous work unequivocally indicates that the ALJ accepted as true that Plaintiff does have some limitations and suffers some pain.  What is relevant in this case, however, is whether Plaintiff's pain and limitations support a finding of total disability as required by the regulations.

As discussed above, the Court finds that there is substantial evidence to support the ALJ's finding that Plaintiff is not totally disabled.  Furthermore, the ALJ detailed his reasons for doubting Plaintiff's credibility regarding the severity of his pain based on inconsistencies in his own testimony (Plaintiff testified that he can only drive 20 minutes at a time, but also testified that he drove to the hearings by himself, which were about an hour from his home), and his disagreement with his own treating physician, Dr. Reilly (Plaintiff insisted that he could not lift more than five pounds for fear of pain, even when confronted with Dr. Reilly's finding that Plaintiff can lift up to 20 pounds occasionally).  AR 21-23.  In this regard, the Court must defer to the ALJ in holding that Plaintiff's testimony, that his pain and limitations prevent him from doing <u>any</u> work, was not totally credible, even if there is contrary evidence in the record that could justify the opposite conclusion.  <u>See</u> <u>Simmons</u>, 807 F.2d at 58.  Accordingly, the Court holds that the ALJ did not err in rejecting Plaintiff's testimony.

### III.    Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence.  Therefore, the ALJ's decision is **AFFIRMED** and Plaintiff's Complaint is **DISMISSED**.

   /s/ Freda L. Wolfson     
The Honorable Freda L. Wolfson
United States District Judge

Date: March 31, 2010